The next case is number 06-3029, Richard Wood against the Department of Defense. Mr. Berry. May it please the Court, my name is John Berry and I represent Petitioner Richard Wood in this case involving an appeal of a jurisdictional issue from the MSPB. It's a very short argument here because both parties have briefed this argument extensively and there have been a lot of cases that have come down in the interim, such as the Garcia decision recently by this Court, that have bared on this case. Our argument is short. In other words, we're presenting that the petitioner presented sufficient facts to show intolerable work conditions. Well, not to show, but to show allegations, whereas the Board should have then evaluated the allegations to make a determination as to whether or not jurisdiction at a hearing stage would be appropriate for Mr. Wood. In this case, the facts that were presented were that Mr. Wood essentially had a stellar 28-year service with the Federal Service, 18 years with the agency as a manager in the grocery commissary, and he discovered massive government fraud, which resulted in the convictions of some government employees to the tune of $100,000. He was subsequently ordered to... But Mr. Berry, he did resign, didn't he? He did resign, Your Honor. So the issue is whether he made a non-frivolous allegation that it was involuntary. That's correct, Your Honor. And, of course, the Board looked at the facts and said there's really no non-frivolous allegation there because it's clearly voluntary. Your Honor, I think that one of the difficulties that was encountered in this case was there appeared to be a lack of clarity in the standard used by the administrative judge. It's much akin to the situation that occurred, at least in my opinion, in the Garcia case. And, I mean, the cases were about six days apart, I think issued by the same administrative judge, and it appears to be a lot of the same language that was placed in there. And one of the difficulties is that it appeared to be a confusing standard. If you look at the show cause order, which is at Joint Appendix 93 and 94, in the last, the second page, Joint Appendix 94, it says, you have the burden of proving that the Board is jurisdiction over your appeal. Accordingly, I order you to file evidence and argument to prove that this action is within the Board's jurisdiction. Well, that may be the ultimate burden, but the threshold question with respect to jurisdiction is whether he's made a non-frivolous allegation that would support the conclusion that his resignation was involuntary. And wasn't that, indeed, the standard that was applied? When you look at the initial decision in this case, which is in the Joint Appendix, and it's located at JA1 through JA8,  when I looked at Joint Appendix, page Joint Appendix 3, it says the appellant's resignation was voluntary. I said to myself, well, that should read that the appellant didn't allege facts sufficient that were non-frivolous in order to maintain jurisdiction at this stage. But if the substance of the decision was right, even if perhaps the right language wasn't used, why do we churn the system and send it back with full confidence that the result's going to be the same? Your Honor, that's a very good question. I think that one of the important points to consider as you deliberate is that when you look at this initial decision, the employee's petitioner's main argument is in regards to the intolerable working conditions. There were several facts laid out throughout this case from the OFC complaint to the response to the show cause order and the resignation itself regarding intolerable working conditions. And the administrative judge focused almost exclusively, pages 1 through 6, on the issue of whether the case was meritorious as opposed to whether there were intolerable working conditions. So I don't believe the administrative judge took full account of everything that was brought forth to her. But if it's so unmeritorious, then it's not non-frivolous an allegation. Well, Your Honor, intolerable working conditions, we believe, is a basis to show that there's grounds for showing that the resignation was involuntary. So what were his choices? He could have accepted the transfer, accepted the demotion, and challenged it from within. However, his opportunities would have been limited to challenge both of those actions. Therefore, why should his opportunities be enlarged by his resignation, which he chose for whatever reason to do? That's an excellent point, Your Honor. I think that when you look at the record as a whole and how he got to this point, starting essentially in 2000 and 2002 when all of these difficulties arose, which led to the separate OFC complaint, which I'm not going to address, he alleged his supervisors got very upset with him because he wouldn't destroy coupons. And that is essentially when he had a great, outstanding record, was a great performer, and then all of a sudden in February of 2003 he started to get a letter of reprimand. Then he's all confused. He has to go to the OSC and file a complaint. Then a few days later he gets a proposed removal. And then he's detailed to a position where he's a manager, and all of a sudden he's told he's got to stock shelves. And people are making fun of him. I mean, this is all in the record, and I can cite to it. But people are making humiliating remarks. There's rumors going around. People aren't talking to him. Of course, the personnel action that was taken against him was related to charges of insubordination, et cetera. And as I read the record, it seems to me he's admitted a lot of those charges. Isn't that right? Well, Your Honor, I looked it over because I realized that that's one of the government's arguments. But I think that what he's saying is— Is it correct that he made phone calls from his office? He's not contesting some of the statements that he made? He's contesting that in most of these charges that that wasn't within the purview of the orders that he received. And so if ultimately, I guess under a Garcia approach, if the court did remand and evaluate for jurisdiction in a hearing, and we got past that because otherwise it would be dismissed at that stage. But don't you have to establish—you're claiming that he was coerced into resigning, that it was not a voluntary act. He was coerced because of all of this. And don't you have to establish that the agency knew that there was no basis for its taking the personnel action in order to establish coercion? I think— And if that is indeed the standard, and I think it is, then where is the non-frivolous allegation that the government knew that it had no basis for taking this action? Your Honor, as I've read the case law, and it hasn't exactly—I mean, a lot of things have been cleared up as I've read the Garcia decision. It appears to me that the totality of the circumstances have to be evaluated in terms of the intelligible working conditions. I don't know if—I mean, I understand that the soundness of the charge has to be evaluated, but that's on—I thought that that went to the first prong of the test as opposed to the second prong. It wasn't quite as clear to me because a lot of the cases that I've reviewed from this Court, it appeared that you could argue that the totality of the circumstances show that a petitioner or an appellant actually suffered from a hostile work environment or hostile working conditions, and you could proceed from that point. And I believe that that's kind of the point that the judge takes in the initial decision. I mean, the major point in this whole process regarding the intelligible working conditions argument has to do with he gets the notice after October 15th that he's going to be demoted and transferred. Relatively little time, he's alleged, to make a decision, and so he goes ahead and in order to resign, he goes ahead and resigns, which is effective the day before he has to do this. As you can see, he's got one family car that's in the record. He can't take transportation because it's difficult because of the night shift as opposed to if he had been transferred to headquarters, which is also in the record. He could have done that during the day or taken some other options. I think that there were just a few other points that are important to consider regarding intelligible working circumstances, which is sort of the background that I've laid out regarding the whistleblower complaint and the process that ensued afterwards from a stellar employee to someone who at least was alleged to have been targeted. And I think that the case law says that while the most important points to consider are those most proximate to the date of resignation, that still timing can be considered previous to establish at least a background. So I would appreciate, I've reserved some time in rebuttal, unless you have any questions. Okay. Thank you, Mr. Barrett. Thank you very much. Ms. Thomas. Good morning. May it please the court. The Merit Systems Protection Board properly dismissed Mr. Woods' appeal for lack of jurisdiction because he failed to make any non-frivolous allegations that meet the requirements of involuntary resignation. He failed to make any non-frivolous allegations that the agency imposed the terms of his resignation. He failed to make any non-frivolous allegations that he had no reasonable alternative. And he failed to make any non-frivolous allegations that the agency could not substantiate the insubordination charges against him. But he does say that the working conditions were intolerable. Isn't that adequate? Your Honor, not under the case law. If he had established that, I'm not sure that that's correct. If, in fact, the working conditions were intolerable, that might be a question. And, therefore, one resigns rather than continue to endure an intolerable situation. You're saying that that is inadequate? What Mr. Wood characterizes as intolerable working conditions is not intolerable working conditions based on the case law. That's a different question. Let's just assume for the sake of this conversation between us that it's supportable that they are intolerable. Would that not then suffice as a non-frivolous allegation that I was obliged to resign rather than endure intolerable conditions? If those conditions amounted to coercion, yes, then you would be correct. Then he would be—the next step would be a hearing. But the allegations that are alleged here are stigma from demotion and a longer commute. And those exact facts were detailed in the Fed Circuit case stats, the United States Postal Service. In that case, the plaintiff also talked about the stigma of transfer, the fear of demotion, and the longer commute. And the court said that the board was correct in saying that that was not coercion and that the need of a hearing— The question isn't whether it's coercion but whether they're intolerable working conditions. I mean, if they were, then his resignation may have been coerced. But what you're saying—you should be saying, I would think, and intend to say— is that a reassignment or a demotion, while undesirable, aren't necessarily intolerable working conditions if they're based on justification. Exactly, Your Honor. Thank you for that correction. That's exactly what I mean, that these allegations that he calls intolerable—the demotion, the transfer— do not amount to intolerable conditions under stats or under Garcia. Of course, he contended he had no way of getting to Walter Reed. He had no way of transportation. Isn't that enough? Well, Your Honor, as stated in the record just six months earlier, he asked for a transfer that was 30 miles longer. It was not capricious or arbitrary for the agency— That could be—we don't know what that was all about. We don't know. Maybe he had relatives that lived there or he could move there. We don't know anything about that. All we know is that he claims that he had no way of getting from where he lived to where he was transferred. Is that an insufficient allegation to support his claim that this was intolerable? Well, Your Honor, based on the case law, based on the fact that this court has stated that a longer commute, demotion, stigma from co-workers is not enough to state that it's intolerable and leads to the decision to resign. And also, at the time that the board made this decision, it was making the decision under the knowledge that he had asked for a transfer that was even longer, a commute that was even longer. So it wasn't an abuse of discretion for the agency to make the decision that, okay, this transfer, which is 30 miles less, is what caused him to resign. Is that fact-finding? We're talking about allegations, non-frivolous allegations. Wouldn't the question of whether, indeed, a 70-mile commute was intolerable or not come out during the hearing? And isn't he entitled to a hearing if he simply makes the allegation that that particular commute was too much? Well, Your Honor, as stated in Garcia and in Statz, there's going to be overlap between the jurisdictional determination and the merits determination. But the difference are that the facts are considered insofar as they illuminate involuntariness. And I don't believe that the board went over that line. They didn't get into a determination of the applicable statutes. As the petitioner stated, he said they did not get into whether there was a hostile work environment. That would have been a merits determination. They went, they delved as far into the facts that led them to come to a reasonable conclusion that the allegations were frivolous. What about the question of whether the action, the personnel action, was baseless? Is that relevant to the question of coercion? No, it isn't, Your Honor, because at this point, the first determination that the board or the administrative judge makes is whether the agency can substantiate the claims of insubordination. And in that element of the Garcia test, there was definitely no weighing of the merits because Mr. Wood admitted the allegations. He admitted the insubordination. So there was no need to go into the motives of Mr. Eller or any of the other supervisors that made that decision. And even if they, and they did go into talking about it, but it's not relevant because the- It almost sounds like the administrative judge did some fact-finding there. Well, Your Honor, it was not relevant or necessary because the board determined that the charges could be substantiated. But the board went a step further and also delved into those retaliation charges and said that they were non-frivolous. Because the person that made the final determination, Mr. Botel, had nothing to do with the issue of the coupons or the retaliation claim. He was the person that made the final determination. So the board went a step further, determined that it was irrelevant because the charges are substantiated, but also went the next step and said, well, this claim is frivolous also because of this. But as I stated and as this court has stated, it's going to be- There's going to be overlap between the jurisdictional determination and the merits determination. But that's necessary. And where the line- It may not always be clear, but where the line is, is illuminating involuntariness and not going into applicable statutes such as harassment in the workplace or some type of other anti-discrimination statutes. Your Honor, as I stated in conclusion, as stated in Garcia, every element must be met. Mr. Wood has not met any of the elements here. Based on the facts and stats, he cannot show that the work environment was intolerable. We're talking about allegations. This is where you started out. We're talking about whether he can get a hearing at the threshold. You're telling us what he would have to prove in order to prevail. Isn't that right? I'm sorry, Your Honor. Let me be more precise in my language. Mr. Wood has not made any non-frivolous allegations that would allow this court to remand and issue an order that a hearing should be prepared or deliberated. Because he has not made any non-frivolous allegations that go to any of the elements of Garcia. You're saying there have been allegations, but you're saying they've been frivolous. Yes, Your Honor. Yes. Are there any other questions? Thank you, Ms. Chavez. Mr. Berry. Thank you, Your Honors. I just have a few points on closing, and I appreciate the court's time today. I believe that the court in Garcia did make a notation regarding the overlapping of the standards. And the court in Garcia at 1344 states that in that case there was a lack of clarity as to what standard was ultimately applied. And in particular, the important point about that was that in this case, the judge, I'm quoting, in her opinion, the administrative judge found that the appellant has not met her burden to prove that the reduction in grade was involuntary, which arguably suggests that instead a preponderance of standard was being applied. In the joint appendix at JA7 and JA8, much the similar language is being applied. The first sentence says, While he may have perceived his assignment to Walter Reed Commissary to be unfair, viewed objectively, it does not represent management action that was coercive or unpleasant, working conditions that were so difficult as to compel a reasonable person to resign. The appellant, I conclude, and I think that's the key phrase here, the appellant, I conclude, resigned to avoid the reduction in grade and assignment to another commissary. She mentions following that, thus he has not made a non-frivolous allegation. So there was just a complete, at least in my opinion, there was a lack of clarity. But, of course, this case predated Garcia, which I'm sure things have changed since then. Didn't he resign because he didn't like the parameters of the job anymore? Distance, travel, and requirements of the job. He didn't like them anymore, so he resigned. No, Your Honor, he was not able, the allegation was that he was not able, given the short amount of time, the length of commute, the fact that it was a night shift at Walter Reed to gain either public transportation. But aren't those requirements of the job? The job is in another city and it's night and so I don't want that job anymore. It's not something I can do, I therefore resign. Well, I think that's not coercion. Is it that the job changed? I think that's a legitimate point, Your Honor. I think that the time circumstances made this a very difficult thing for Mr. Wood to actually accomplish because he's faced with the fact that they've got one family car, they both work, they would have to work different shifts, and there just wasn't enough time to arrange these things. You're just supporting the statement, the question I asked, which is that the requirements of the job no longer suited him. Your Honor, the petitioner lost his job. He would have liked to have continued, but he was unable. At least that's our respectful position. In closing, I would just say that it appears, at least on this record, that there is a factual dispute. At least that's our contention. And as the Dumas Court at 789 F. 2nd, 892, 894 said, and Braun v. Department of Veterans Affairs at 50 F. 3rd, 105, disputes should go to a hearing. I believe that the language here is very similar to the decision in Garcia in terms of the standard, and there is just, I think, a little bit of lack of clarity. And we would ask that you consider that and permit us a reversal and a remand. If we get remand, we still have to prove jurisdiction under Garcia by preponderance of the evidence to get to the ultimate merits. So I appreciate your time. I know Petitioner Wood would really appreciate your time, and I thank you. Unless you have any questions. Okay. Thank you, Mr. Berry. Thank you, Ms. Dumas. The case is taken under submission.